**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
|  |  | PRISONER |
| LUIS FERNANDEZ | : | CIVIL NO. 3:03CV583 (JCH)(HBF) |
| v. | : |  |
| JOHN ARMSTRONG, ET AL. | : | MARCH 29, 2004 |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

This case is a civil rights action by Luis Fernandez, an inmate of the Connecticut Department of Correction, complaining that his appeal in a case was dismissed by the Connecticut Appellate Court in 2002 due to his lack of litigation resources. He blames the Department of Correction for failing to allow him to use the Resource Center and typewriters at the Cheshire Correctional Institution, for denying free photocopies, and other alleged related frustrations. He seeks compensatory and punitive damages and wide-ranging injunctive relief for changes in library operations and personnel decisions concerning defendants.[1] The defendants are 15 present or former officials of the Connecticut Department of Correction.

We urge the Court to render Summary Judgment for all defendants because:

1.    The Eleventh Amendment bars this action against the defendants in their official capacities.

2.    The State is not a "person" subject to liability under 42 U.S.C. § 1983.

3.    Plaintiff's request for injunctive relief is moot.

4.    The Amended Complaint fails to state a claim upon which relief can be granted.

---

[1] These remedies are exactly the kind of action rejected by the U.S. Supreme Court in Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L.Ed.2d 606 (1996).

5.    The plaintiff has failed to demonstrate personal participation or responsibility.

6.    The defendants are protected by their qualified immunity.

7.    The Court should decline to accept jurisdiction over any state law claims in this case.

## FACTS

The plaintiff is an inmate of the Connecticut Department of Correction, MacDougall-Walker Correctional Institution in Suffield, Connecticut, currently serving twenty year and eight year sentences for drug convictions. Def. Statement, para. 1. The defendants were, at various times referenced in the plaintiff's complaint, employed by the Connecticut Department of Correction in various positions. Def. Statement, para. 2.

During the time periods referenced in the plaintiff's Amended Complaint, and particularly in the time period July to December, 2002, the plaintiff was a frequent user of the Resource Center at the Cheshire Correctional Institution in Cheshire, Connecticut where he was incarcerated as a sentenced inmate. Def. Statement, para. 3. The Resource Center was located in a room inside of the prison and it contained a small collection of general reference materials, including some law books of statutes and cases. It also had some fiction and non-fiction materials, newspapers and magazines. It also held between 4 to 7 operating electric typewriters, a photocopy machine, and tables and chairs accommodating about 22 patrons. Def. Statement, para. 4.

In the time period referenced in plaintiff's Amended Complaint, due to limited space, inmates were allowed to attend the Resource Center off a waiting list system so as to give as many as possible with an interest the opportunity to use the Resource Center. Def. Statement, para. 5. To gain access, inmates would submit written requests and, on the days or times of day

when their unit was eligible to use the Resource Center, their names would be taken from the waiting list. Plaintiff's housing unit typically was eligible to use the Resource Center 4 days per week. The defendant, Candace Hall, would administer this process with the cooperation of custody staff. Def. Statement, para. 6. After using the Resource Center, an inmate could submit another request, but his name would go to bottom of the waiting list. Exceptions were made for bona-fide, documented emergencies. Def. Statement, para. 7.

The typewriters located in the Resource Center were also available for inmates to use, again on a first-come, first-serve basis. Plaintiff could use the typewriters whenever he was in the Resource Center if it was not being used by another inmate. Typewriters were also available in other parts of the prison from time-to-time for inmate use. Def. Statement, para. 8.

Plaintiff signed up to use the Resource Center and typewriters as often as he could, and the defendant Hall approved his access and use of typewriters as often as she could, and she recollects seeing him about every week, often several times a week. Def. Statement, para. 9.

The Resource Center also had a photocopy machine available for copying material from inmates. Plaintiff's material was copied and mailed in accordance with DOC Directive Secs. 3.10, 10.7 and 6.10. Def. Statement, para. 10.

Plaintiff filed many grievances on these points and others, and his grievances were ruled upon. Def. Statement, para. 11.

The case which plaintiff alleges was dismissed due to his lack of resources was an asset forfeiture case. Def. Statement, para. 12. In Connecticut, there is an Inmate Legal Assistance Program ("LAP") which provides civil legal assistance to inmates in all DOC facilities. Def. Statement, para. 13.

## SUMMARY JUDGMENT STANDARDS

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." It has been held that summary judgment may be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and to which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 538 (1986); see also, Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 568-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a motion for summary judgment is adequately supported by documentary exhibits, depositions, answers to interrogatories or further affidavits, it must be controverted by a similar response setting forth specific facts showing that there is a genuine issue for trial, absent which summary judgment shall be entered, if appropriate. Foster v. Turner Broadcasting, 844 F.2d 955, 959 (2nd Cir. 1988), cert. denied, 488 U.S. 994 (1988). In other words, there must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party opposing summary judgment may not rely on conjecture or conclusory assertions that the other party is not telling the truth. See Gottlieb v. County of Orange, 84 F.3d. 511, 518 (2nd Cir. 1986). Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose. See e.g., Celotex, supra; H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879, F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. (1986), cert. denied, 480 U.S. 932 (1987). It is particularly appropriate in cases under 42

U.S.C. § 1983 involving insubstantial claims such as this case. Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

## ARGUMENT

### 1.    The Eleventh Amendment Bars This Action Against The Defendants In Their Official Capacities

It is now well established that a suit against a State official in his official capacity is, in actuality, a suit against the State. Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); Schiff v. Kerrigan, 625 F.Supp. 704, 707 n.7 (D.Conn. 1986). The real party in interest is the State. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). It is equally well settled that the doctrine of sovereign immunity embodied by the Eleventh Amendment precludes a suit for damages against a state and its agencies. Edelman v. Jordan, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment[2] is a constitutional limitation on the federal judicial power established in Article III, Section 2 of the United States Constitution in actions brought by a citizen against his own state. Pennhurst State School & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2 67 (1984); Ex Parte State of New York No. 1, 256 U.S. 490, 491, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Hans v. Louisiana, 134 U.S. 1, 15, 10 S.Ct.

---

[2] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state.

Despite its limited language, it is well settled that this provision precludes federal court jurisdiction over suits brought against the state by its own citizens, absent consent. Pennhurst State Schools & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Edelman v. Jordan, 415 U.S. 651, 673-74, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); see also, Red Star Towing & Transportation Co. v. State of Connecticut, 481 F.Supp. 1033, 1034 (D.Conn. 1976).

504, 33 L.Ed. 842 (1890); <u>Minotti v. Lensink,</u> 798 F.2d 607, 609 (2nd Cir. 1986). Of course, a sovereign's Eleventh Amendment immunity may be waived by an unequivocally expressed consent to suit. <u>Pennhurst, supra,</u> at 99; <u>see, e.g.</u>, <u>Edelman v. Jordan,</u> 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); <u>Clark v. Barnard</u>, 108 U.S. 436, 477 2 S.Ct. 878, 27 L.Ed. 780 (1893). Consent means an explicit statutory provision granting permission to sue. <u>Florida Dep't. Of Health v. Florida Nursing Home Association</u>, 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); <u>see also</u>, <u>Duguay v. Hopkins</u>, 191 Conn. 222, 227, 464 A.2d 45 (1983); <u>Comba v. Ridgefield</u>, 177 Conn. 268, 273, 413 A.2d 859 (1979). In the instant case, plaintiff, in part, sues the defendants for money damages in their official capacities. The plaintiff did not, and cannot, allege consent to suit. Consequently, summary judgment should be rendered in defendants' favor on this point.

### 2. The State Is Not A "Person" Subject To Liability Under 42 U.S.C. § 1983

42 U.S.C. § 1983 provides that, "Every <u>person</u>, who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory, subjects ... any citizen ... to the deprivation of any rights ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis added). The United States Supreme Court has refused, in view of the state's traditional sovereign immunity and the Eleventh Amendment, to construe the word "person" as including a State or its agencies. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); <u>see also</u> <u>Krozser v. New Haven</u>, 212 Conn. 415, 562 A.2d 1080 (1989), <u>cert. denied</u>, 493 U.S. 1036 (1990). Therefore, to the extent that this action is against the State through its officials, it is barred for this reason as well.

### 3. Plaintiff's Request For Injunctive Relief Is Moot

An actual case or controversy must exist at every stage of the proceedings. U.S. Const. Art. III; Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). Where a court can no longer grant the requested relief, the court must dismiss the case as moot. "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2nd Cir. 1983). In the case of an inmate confined in a correctional institution, the Second Circuit has held that an inmate's request for declaratory or injunctive relief becomes moot when the inmate is transferred from that institution or released from the custody of the Department of Correction. See, e.g., Young v. Coughlin, 866 F.2d 567, 568 n.1 (2nd Cir. 1989), cert. denied, 492 U.S. 909 (1989); Mawhinney v. Henderson, 542 F.2d 1, 2 (2nd Cir. 1976); Phillips v. Ienuso, 1995 W.L. 237062 (S.D.N.Y. 1995).

The allegations in the complaint in this case concern incidents that allegedly occurred at the Cheshire Correctional Institution in 2002. The plaintiff is no longer housed at Cheshire Correctional Institution. Def. Statement, para. 1. Accordingly, the claims for declaratory and/or injunctive relief should be dismissed as moot pursuant to 28 U.S.C. § 1915(c)(2)(B)(ii) (directing the Court to dismiss at any time a claim upon which relief may not be granted).

**4.  The Amended Complaint Fails To State A Claim Upon Which Relief Can Be Granted**

**a.  Access to Court**

Plaintiff contends that the events in this case constitute a denial of his rights to access to the courts without due process in violation of his rights under the Fourteenth Amendment to the United States Constitution. Amended Complaint, p. 107. He seeks damages and wholesale improvements and expansion of legal library services to inmates in the Department of

Correction.  We urge the Court to render summary judgment for the defendants because his rights were not violated.

First, it is clear in the law that inmates do not have any freestanding right to a library. Prison law libraries are not ends in themselves.  The U.S. Supreme Court has only acknowledged a right of access to the courts, and then only "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L.Ed.2d 606 (1996) quoting Bounds v. Smith, 430 U.S. 817, 825, 97 S. Ct. 1491, 52 L.Ed.2d 72 (1977).

Moreover, the right "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."  Lewis v. Casey, supra at 355.  It does not attach to "just any type of frustrated legal claim."  Id. at 354.  To the contrary, the right only extends to tools needed "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Smith v. Armstrong, 968 F. Supp. 40, 47 (D. Conn. 1996) quoting Lewis v. Casey at 355.

In the instant case, the case which plaintiff complains was dismissed due to his lack of access to resources and  other allegedly related frustrations was not any challenge to his sentence nor was it a complaint about the conditions of his confinement.  Rather, it was an asset forfeiture case concerning his contraband cash.  Def. Statement, para. 12; Case File, Exhibit H.  That is a civil suit in equity, and an in rem proceeding for forfeiture of money or property.  Conn. Gen. Stat. § 54-36h(b).  That is not the type of case to which the access to court right adheres.

Finally, <u>Lewis v. Casey</u> firmly establishes that plaintiff must suffer an actual injury in violation of <u>Bounds</u>.  <u>Smith v. Armstrong</u>, <u>supra</u> at 54.  The Supreme Court specifically disclaimed any requirement that inmates have sufficient resources to discover grievances or litigate effectively once their claims are brought before the court.  <u>Lebron v. Armstrong</u>, 289 F. Supp. 2d 56, 60 (D. Conn. 2003).  Effective litigation is not a constitutionally protected right under <u>Lewis</u>.  <u>Torres v. Armstrong</u>, 2003 U.S. Dist. LEXIS 1296 (D. Conn. 2003).  For example, state prison officials cannot actively interfere with inmate's attempts to prepare legal documents or so stymie them that they cannot even file a complaint.  <u>Id</u>.  The file in the case which plaintiff complains was dismissed shows that it was dismissed for his failure to file an appellate brief, and it shows that plaintiff had 7 months to file a brief, and that he had filed typed pleadings and other communications in the case while it was pending an appeal, and that he had filed motions for extension of time in the case.  <u>See</u> Exhibit H.  Plaintiff had many visits to the Resource Center in this time period.  Def. Statement, para. 9; Exhibit A.  His failure to file a brief on time, or failure to seek a timely extension of time, or failure to work on the case from his cell, was his own fault, not the fault of the Department of Correction.

Connecticut provides resources for inmates to challenge their sentences and condition of confinement.  It has a Public Defender service for indigent inmates for criminal matters.  Conn. Gen. Stat. § 51-289 et seq.  For civil matters, it has an Inmate Legal Assistance Program ("LAP").  Conn. Gen. Stat. § 18-81; Def. Statement, para. 13.  These services address plaintiff's right of access to courts.  <u>Smith v. Armstrong</u>, <u>supra</u>.  The Public Defender Service does not represent indigent inmates in asset forfeiture cases as it is a civil proceeding.  Nor does the Inmate Legal Assistance Program represent inmates in such proceedings.  LAP only assists inmates in cases where inmates have a right of access to the courts.  <u>See</u>, Contract, Attachment J,

p. 10.   As noted above, asset forfeiture cases do not concern sentences or conditions of confinement, and therefore are not within the category of cases in which inmates have a right to access to the courts.   Consequently,  Connecticut is in compliance with any constitutional requirements with respect to this plaintiff's access to court rights, and plaintiff has not proven an actual injury to a qualified case interfering with his right of access to the courts in this case. Consequently, judgment should enter for the defendants in this case on this issue.

### b.   Free photocopies

Plaintiff further complains that he was not given free photocopies in violation of his constitutional rights.  Amended Complaint, p. 11.  However, the facts show that the Resource Center had a photocopy machine available for copying material from inmates, and that plaintiff's material was copied and mailed in accordance with DOC Directives.  Def. Statement, para. 10; Records, Exhibit G.

In the instant case, photocopy rules appear in DOC Directive 3.10 as follows:

8.  <u>Photocopying Expense</u>.   Fees for photocopying shall be received by the Department prior to documents being provided to the requestor.

    A.  <u>Other State Agency</u>.  There shall be no charge for another state agency for a copy of any document under 1000 pages.  If the document is more than 1000 pages, the charge shall be twenty-five cents for each page.   Any charge to another state agency may be waived in accordance with a reciprocal agreement to waive such fees.

    B.  <u>General Public</u>.  The charge for duplicating material for the general public shall be twenty-five cents for each page copied.

    C.  <u>Inmates</u>.  Photocopying for inmates shall normally be restricted to legal materials.  Photocopying of any other materials shall be at the discretion and convenience of the Unit Administrator.  An inmate shall be charged twenty-five cents for each page copied.  The funds shall be deducted from the inmate's account prior to providing the inmate with the documents. The cost for an indigent inmate, as defined in Administrative Directive 6.10, Inmate Property, shall be waived.

DOC Directive 3.10 (8), Affidavit of Major Hall, Exhibit C.

The postage rules provide as follows:

D. <u>Cost of Correspondence</u>.    Each inmate shall pay personal mailing expenses, except an indigent inmate.   An indigent inmate, as defined in Administrative Directive 6.10, Inmate Property, shall be permitted two (2) free social letters each week, and five (5) letters per month addressed to the court or attorneys, including any request for speedy trial under Sections 54-82c and 54-186 of the Connecticut General Statutes. Additional free correspondence to courts and attorneys may be authorized by the Unit Administrator based upon the reasonable needs of the inmate.

DOC Directive 10.7 (4)(D), Affidavit of Major Hall, Exhibit D.

As the above rules state, some postage and photocopy fees are waived for indigent inmates.   An indigent inmate is one who has less than $5.00 in his or her inmate account at admission, or whose account has not exceeded $5.00 for the previous 90 days.   DOC Directive 6.10 (3)(C), Affidavit of Major Hall, Exhibit E.  The plaintiff was not indigent under these rules until after August 20, 2002, and he received free postage and photocopies as allowed under these directives after that date.  <u>See</u> Inmate Account Records, Affidavit of Major Hall, para. 7, Exhibit F; Records, Affidavit of Major Hall, para. 8, Exhibit G.

The DOC Directives applicable in the instant case indicate that a pro se prisoner litigant must pay for postage and 25 cents per page for photocopies unless he or she is indigent.  The law is clear that the plaintiff has no protected right to free mail or photocopying services.  <u>Soto v. Meachum</u>, 1991 U.S. Dist. LEXIS 14824 (D. Conn. 1991).  An inmate's right to access to the courts is not infringed by reasonable charges for copying services.  <u>Dugar v. Coughlin</u>, 613 F. Supp. 849 (S.D.N.Y. 1985).  His "right to access to the courts may be balanced against the State's legitimate interests, including budgetary concerns."  <u>Gittens v. Sullivan</u>, 670 F. Supp. 119, 122 (S.D.N.Y. 1987) <u>aff'd</u> <u>per</u> <u>curiam</u> 848 F.2d 389 (2nd Cir. 1988).  "There is simply no statutory or constitutional right to either free postage stamps or to free photocopies, particularly where, as here, the prisoner cannot show he is indigent."  <u>Lyons v. Meese</u>, 1988 U.S. Dist. LEXIS 16957 (E.D. Vir. 1988) <u>citing</u> <u>Twyman v. Crisp.</u>, 584 F.2d 352, 359 (10th Cir. 1978).

With respect to postage for litigation, the DOC Directive which gives indigent inmates five free stamped envelopes monthly, and which can be supplemented "based upon the reasonable needs of the inmate" (DOC Directive 10.7 (4)(D)), is not per se unconstitutional. In Gittens v. Sullivan, supra, our Court of Appeals upheld a New York Corrections Directive which allowed indigent inmates $1.10 per week for free stamps and an additional advance of at least $36 for postage for legal mail. The lower court there ruled:

> The prisoner's right to access to the courts may be balanced against the State's legitimate interests, including budgetary concerns.

Gittens v. Sullivan, 670 F. Supp. at 122. The Court went on to find the provision to be adequate to provide an indigent inmate with sufficient postage to prosecute any normal amount of litigation, and pointed to the "avalanche" of papers submitted by the plaintiff as proof enough of meaningful access. Id. at 123.

In the instant case, the State of Connecticut supplies a similar amount to indigent inmates. Accordingly, a predecessor Connecticut rule was upheld in the past. See, e.g., Vincenzo v. Inglis, No. 3-89-083 (WWE) (Recommend Ruling, July 12, 1991), Attachment A. The current rule should be upheld as well. The Constitution does not require that an indigent inmate be provided with unlimited free postage, only a "reasonably adequate amount of postage for access to the courts." Chandler v. Coughlin, 733 F. Supp. 641, 647 (S.D.N.Y. 1990); see also Zigmund v. Wynne, 1999 U.S. App. 20144 (2nd Cir. 1999). These limits do not seem to have interfered with this plaintiff's access to the courts. See, e.g., Fernandez v. Armstrong, Civ. No. 3:02 CV 2252 (CFD)(WIG); Fernandez v. Rinaldi, Civ. No. 3:03 CV 146 (WWE)(HBF); Fernandez v. Warden, No. CV 02 0469955 S; Fernandez v. Coyle, No. CV 02 04703305; Page, Hiramrzdn and Fernandez v. Armstrong, No. CV 02 04704455; Fernandez v. Warden, No. CV 03

00039885; <u>Fernandez v. Warden</u>, No. CV 03 0004294; and <u>Fernandez v. Warden</u>, No. CV 03 0475502.

The DOC requirement that an inmate be indigent for a set period of time before being eligible for free photocopies or postage is not unconstitutional.  In <u>Nicholas v. Tucker</u>, 114 F.3d 17 (2nd Cir. 1997) <u>cert</u>. <u>denied</u> 523 U.S. 1124 (1998) the Court of Appeals tested the validity of the provision of the Prisoner Litigation Reform Act which required even indigent inmates to pay court filing fees in installments based on average monthly deposits in their inmate accounts, or average monthly balance, over a <u>six</u> <u>month</u> <u>period</u>.  28 U.S.C. § 1915(b)(1).  In that case, as here, the plaintiff complained that the law was unconstitutional because it prevented him from spending his limited funds in the manner he chooses.  The Court found that rules requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the State.  <u>Id</u>. at 21 <u>citing</u> <u>Boller v. Gunn</u>, 107 F.3d 227 (4th Cir. 1997).  That precedent has proven dispositive in this District in similar claims in the past.  <u>See, e.g.,</u> <u>Lebron v. Commissioner Armstrong</u>, 2003 U.S. Dist. LEXIS 17337 (D. Conn. 2003).  We urge the Court to rule likewise here.

In Connecticut, an inmate's basic needs are supplied by the State regardless of an inmate's ability to pay, including food (DOC Directive 10.18, Attachment B), clothing (DOC Directive 6.10, Attachment C), shelter (DOC Directive 9.2, Attachment D) and medical care (DOC Directive 8.1, Attachment E).  Other items desired by inmates, including snacks, can be purchased from the DOC Commissary.  (DOC Directive 3.8, Attachment F). That plaintiff may have to choose between commissary purchases and litigation sometimes is not a constitutional defect.

That plaintiff may experience delays in his litigation progress due to limited resources is also not a constitutional defect.  Even before the U.S. Supreme Court ruled that actual injury was required to state a claim of lack of access to the courts, <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996), our courts considered such evidence in rejecting inmate challenges to limits on free litigation supplies.  As the Court ruled in <u>Joseph v. Coughlin</u>, 1994 U.S. Dist. LEXIS 17685 (N.D.N.Y. 1994), aff'd 60 F.3d. 811 (2nd Cir. 1995):

> A prisoner has a right to receive legal mail**.  Heimerle v. Attorney General,** 753 F.2d 10, 12-13 (2d Cir. 1985); **Davidson v. Scully,** 694 F.2d 50, 53 (2d Cir. 1982).  However, a prisoner must establish "actual injury" in order to prevail. **Sands v. Lewis,** 886 F.2d 1166, 1171 (9th Cir. 1989) (actual injury must be alleged where an inmate's claim does not involve the prison's law libraries or denial of legal assistance ); **see also Purcell v. Coughlin,** 790 F.2d 263, 265 (2d Cir. 1986) (access to courts claim dismissed for failure to allege any injury stemming from denial of pens); **Sowell v. Vose,** 941 F.2d 32, 34-35 (1st Cir. 1991) (complaint dismissed for lack of actual injury when inmate failed to show denial of access to all his legal documents); **Johnson v. Moore,** 948 F.2d 517, 521 (9th Cir. 1991) (summary judgment granted to defendant where inmate did not substantiate his claim that a dismissal for untimeliness was attributable to the denial of photocopies); **Henthorn v. Swinson,** 955 F.2d 351, 354 (5th Cir.), **cert. denied,** 119 L.Ed. 2d 593, 112 S. Ct. 2974 (1992) (access to courts claim denied for failure to show injury stemming from an action that had been dismissed and subsequently reopened); **Griffin v. Coughlin,** 743 F. Supp. 1006, 1022 (N.D.N.Y. 1990); **Martin v. Lane,** 766 F. Supp. 641, 646 (N.D. Ill. 1991) (prejudice not shown when alleged denial of access resulted in late submission of motions papers since inmate was not penalized for late filing).  Without the plaintiff claiming that he suffered some injury from the alleged denial of his legal mail**,** the claim does not amount to a constitutional violation.
>
> In the case at bar, the plaintiff has failed to allege any adverse effect caused by the alleged denial of his legal mail.  Indeed, such a claim by the plaintiff may prove difficult because the plaintiff eventually received the criminal court transcript he requested soon after he complained about not receiving it.

<u>Joseph v. Coughlin</u>, <u>supra</u>.

Post <u>Lewis v. Casey</u>, it is absolutely clear that "[a] delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation."  <u>Standley v. Leyder</u>, 2001 U.S. Dist. LEXIS 2274 (S.D.N.Y. 2001) <u>quoting</u> <u>Jermosen</u>

v. Coughlin, 877 F. Supp. 864, 871 (S.D.N.Y. 1995). Plaintiff must show actual injury, such as the denial of a legal claim in a qualified case. Newman v. Holder, 101 F. Supp. 2d 103, 107 (E.D.N.Y. 2000).

Similarly, in the instant case, plaintiff complains about a rule without demonstrating actual injury to litigation in a qualified case. Accordingly, summary judgment should enter for the defendants.

### c. Free Typewriters

Plaintiff further complains that he was denied access to typewriters to work on his litigation. Am. Complaint, pp. 28, 65. The facts show that he was allowed access to prison typewriters whenever he was in the Resource Center, in his turn. Aff. of C. Hall, para. 8. Typewriters were also available in living units. See, Records, Exhibit G. Moreover, there is "…no constitutional right to a typewriter as an incident to the right of access to the courts." Taylor v. Coughlin, 29 F.3d 39, 40 (2nd Cir. 1994) quoting Wolfish v. Levi, 573 F. 2d 118, 132 (2nd Cir. 1978) rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1970).

### d. Cruel and Unusual Punishment

Plaintiff also alleges "violation 1st, 4th, 5th, 6th, 14th Amendment to the U.S.C., infliction of cruel and unusual punishment by deliberate indifference physical and mental anguish emotional injury deprivation of fundamental constitutional right(s) (others)" all apparently related to the fact that his appeal was dismissed. Amended Complaint, p. 7.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" U.S. Const. Amend. VIII, and applies to states through the Due Process Clause of the Fourteenth Amendment. See Robinson v. California, 370 U.S. 660, 666-67, 82 S. Ct. 1417, 8 L.Ed.2d 758 (1962). To prove a violation of the Eighth Amendment, an inmate must show (1) that the

deprivation alleged is "objectively sufficiently serious" such that the plaintiff was denied "the minimal civilized measure of life's necessities" and (2) that the defendants officially possessed a "sufficiently culpable state of mind" associated with "the necessary and wanton infliction of pain." Trammell v. Keane, 338 F.3d 155, 162 (2nd Cir. 2003) citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Gaston v. Coughlin, 249 F.3d 156, 164 (2nd Cir. 2001). In prison condition cases, the state of mind requirement is one of deliberate indifference to inmate health or safety. The instant case shows no violation of rights, let alone deliberate indifference.

Also, the Prisoner Litigation Reform Act provides that "no Federal civil action may be brought by a prisoner … for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Under this limitation, courts have consistently held that section 1997e(e) bars prisoner civil rights suits seeking damages for constitutional violations where the inmate-plaintiff suffers only emotional or mental injury. Cox v. Malone, 199 F. Supp. 2d 135, 139 (S.D.N.Y. 2002) citing Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997) and Wright v. Miller, 973 F. Supp. 390 (S.D.N.Y. 1997). See also, Jenkins v. Haubert, 179 F.3d 19, 23 (2nd Cir. 1999). There is no statutory definition of "physical injury" as used in section 1997e(e). Liner v. Goord, 196 F.3d 132, 135 (2nd Cir. 1999). However, it has been held that the physical injury must be more than de minimus. Liner v. Goord, Id., citing Siglar v. Hightower, supra at 193.

In the instant case, plaintiff makes no showing of physical injury. Consequently, summary judgment should enter in defendants' favor on these points.

### e. Grievance Rights

To whatever extent plaintiff has alleged interference with his grievance filing, and to whatever extent the Court deems that such an allegation states a claim, the defendants do not

claim he failed to exhaust his prison administrative remedies in this case. Accordingly, plaintiff has no "actual injury" and judgment should enter for defendants on this point as well. See Lopez v. Smiley, 2003 U.S. Dist. 16724 (D. Conn. 2003) citing Graham v. Henderson, 89 F.3d 75, 80 (2nd Cir. 1996) and Lewis v. Casey, supra. Moreover, he filed a multitude of grievances, which were ruled upon. See Aff. of Major Hall, para. 9, Exhibit G.

### f.  Failure to Promulgate Directives

Plaintiff accuses eleven defendants of failing to promulgate DOC Directives inserting mandatory language giving him unspecified rights creating liberty interests. Amended Complaint, p. 98. This allegation spells out no known cause of action as plaintiff has no right to require defendants to promulgate directives. Moreover, the insertion of mandatory language in directives does not create liberty interests. See Sandin v. Conner, 515 U.S. 472, 483, 115 S. Ct. 2295, 132 L.Ed.2d 418 (1995). Accordingly, we urge the Court to render judgment for defendants on this point as well.

### g.  Other Claims

Finally, plaintiff makes many other legal claims in his 116 pages of Amended Complaint, but they appear to be repetitive of the issues addressed above. If any other legal grounds for relief are found by this court to be spelled out, the defendants do not understand the nature of the complaints. Federal Rule of Civil Procedure 8 requires a Complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F. R. Civ. P. Rule 8(a)(2). The rule also requires that "each averment of a pleading shall be simple, concise, and direct." Rule 8 (e)(1), F. R. Civ. P. Under the rules' liberal pleading standards, a plaintiff must disclose sufficient information to permit the defendant "to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2nd Cir. 1991). "Dismissal… is usually reserved for

those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2nd Cir. 1988).

Complaints such as the instant one, "which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim" do not fairly apprise either the Court or the defendants of the nature of the claim and therefore should be dismissed. Prezzi v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y. 1972); see, Karlinsky v. New York Racing Association, 52 F.R.D. 40, 43 (S.D.N.Y. 1971); cf., Prezzi v. Schelter, 469 F.2d 691, 692 (2nd Cir. 1972), cert. denied 411 U.S. 935 (1973) ("[S]ince [the complaint] contained a labryinthian prolixity of unrelated and vituperative charges that defied comprehension, it failed to comply with the requirement of Rule "…"); Cunningham v. United States, Civ. No. N-87-567 (WWE) (Ruling, August 26, 1988); Attachment G.

**5.    The Plaintiff Has Failed To Demonstrate Personal Participation Or Responsibility**

To prove a claim under 42 U.S.C. § 1983, the plaintiff must show that the defendants were personally involved in the alleged wrongdoing or contributed in some way to causing plaintiff's alleged injuries. See Poe v. Leonard, 282 F.3d 123, 140 (2nd Cir. 2002); Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994). In this case the plaintiff makes no allegation against the defendant Armstrong, and his claims against the defendants Rodriguez, Feliciano, Hannah, Roby, Gallick, Knight, Muniz, Major Hall, Brozozwski, Halleran and Bartholomew are vague, or concern alleged notifications after the fact, or concern matters which do not state a claim upon which relief can be granted. Accordingly, we urge the Court to render summary judgment in favor of these defendants, and any others not found to have participated in any alleged constitutional deprivation, for lack of personal participation or responsibility.

6.     __The Defendants Are Protected By Their Qualified Immunity__

The defendants in this case, by virtue of their status as public officials who must be allowed to do their jobs in good faith without fear of being liable for damages each time they make a decision on behalf of the State, are clothed with qualified immunity in this case.  Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The Supreme Court has held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, supra, at 818.  In order for the immunity to be available, the public official or employee must have acted under an objectively reasonable belief that his actions were lawful.   Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Eng v. Coughlin, 858 F.2d 889, 895 (2nd Cir. 1988).

While the issues of qualified immunity and privilege ordinarily involve issues of fact which need to be affirmatively pleaded, the Supreme Court has sanctioned the final resolution of civil rights cases on qualified immunity grounds on motion for summary judgment in appropriate cases.  See Harlow v. Fitzgerald, supra; see also, Cartier v. Lussier, 955 F.2d 841 (2nd Cir. 1992); Magnotti v. Kuntz, 918 F.2d 364 (2nd Cir. 1990).  In the instant case, the Complaint shows no grounds upon which a constitutional claim can stand under the facts alleged.  Schecter v. Comptroller, City of New York, 79 F.3d 265 (2nd Cir. 1996); Mozzochi v. Borden, 959 F.2d 1174, 1178 (2nd Cir. 1992).  Even if the law was clearly established, under the circumstances alleged, the facts do not support the sufficiently culpable state of mind necessary to support liability.  Thus, the facts alleged demonstrate that it was objectively reasonable for the officials to believe that their actions did not violate those rights.  Bliveira v. Mayer, 23 F.3d 642, 648-49 (2nd Cir. 1994).  The plaintiff's allegations should not suffice to subject these governmental

officials to the costs of trial.  <u>Harlow</u>, <u>supra</u>, at 817-18.  It follows then, that the public officials in this case should be shielded from any personal liability.  This case should, thus, be dismissed with prejudice.

Should any portion of the Complaint survive the Motion for Summary Judgment currently under consideration, then we respectfully reserve the right to prove the defense at trial.

### 7.     <u>The Court Should Decline To Accept Jurisdiction Over Any State Law Claims In This Case</u>

The District Court may decline to exercise supplemental jurisdiction over state law claims in a case when it has dismissed all claims over which it has original jurisdiction, such as the § 1983 claims raised in this case.  <u>See</u> 28 U.S.C. § 1367(c)(3).  Where federal claims are dismissed before trial, the state claims should be dismissed as well.  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Baylis v. Marriott Corp.</u>, 843 F.2d 658, 665 (2nd Cir. 1988).

The federal claims in this case should be resolved in favor of the defendants.  If that occurs, then we urge the Court to decline supplemental jurisdiction over the state law claims in this case, if any.

## CONCLUSION

For all of the foregoing reasons, we urge the Court to render summary judgment for the

defendants, and dismiss the Amended Complaint accordingly.


DEFENDANTS
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:    /s/
Robert F. Vacchelli
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct05222
E-Mail:  robert.vacchelli@po.state.ct.us
Tel.: (860) 808-5450
Fax: (860) 808-5591


## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 29th day

of March, 2004:


Luis Fernandez, Inmate No. 279900
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT  06080


    /s/
Robert F. Vacchelli
Assistant Attorney General