UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS FERNANDEZ : | |
| : | PRISONER CASE NO. |
| v. : | 3:03-cv-583 (JCH)(HBF) |
| : | |
| JOHN J. ARMSTRONG, et al.[1] : | DECEMBER 7, 2004 |

**RULING RE: DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [Dkt. No. 46]**

Plaintiff Luis Fernandez ("Fernandez"), currently confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, commenced this civil rights action pursuant to 28 U.S.C. § 1915. Fernandez contends that defendants deprived him of his constitutional right of access to the courts. Defendants have filed a motion for summary judgment on several grounds. For the reasons that follow, defendants' motion is granted.

**I.     STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed.R.Civ.P. 6(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g, 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is

---

[1] The named defendants are John J. Armstrong, Hector Rodriguez, Farrell, Feliciano, Ahmed, Candace Hall, Hannah, Roby, Gallick, Knight, Muniz, Hall, Richard Brozozwski, Beth Halleran and Bartholomew. All defendants are named in their individual and official capacities.

genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes

Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. See Lujan v. Nat'l. Wildlife Fed'n, 497 U.S. 871, 888 (1990). In addition, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiffs'] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiffs].'" Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Anderson, 477 U.S. at 252).

## II.    FACTS[2]

The action concerns incidents occurring between July 2002 and November 2002, during which time Fernandez was confined at the Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut. During this time, the Resource Center at Cheshire contained a small collection of reference materials, including some law books containing statutes and cases, other reading materials, at least four electric typewriters, a photocopy machine, and chairs and tables to accommodate about twenty-two

---

[2] The undisputed facts are taken from Defendants' Local Rule 56(a)(1) Statement [Dkt. No. 48] with attached exhibits, the Affidavit of Candace Hall [Dkt. No. 49] with attached exhibits, the Affidavit of Major Jonathan Hall [Dkt. No. 50] with attached exhibits, the exhibits attached to Defendants' Memorandum in Support of Motion for Summary Judgment [Dkt. No. 47], the various exhibits attached to the amended complaint [Dkt. No. 23] and Fernandez' brief in opposition to the motion for summary judgment [Dkt. No. 59], Fernandez' "Motion Opposing Statement to Defendants' Local Rule 56(a)(1) Statement" [Dkt, No. 58] and his Affidavit in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 57]. To the extent facts are disputed, they are stated in the light most favorable to the plaintiff.

patrons. Defendant Candace Hall was the librarian in the Resource Center during this period.

An inmate wishing to use the Resource Center submitted a written request to have his name put on a waiting list. When a particular housing unit was scheduled to use the Resource Center, the waiting list was used to determine which inmates were called to use the Resource Center. When an inmate was called to use the Resource Center, his name was removed from the waiting list. If he wished to use the Resource Center again, the inmate had to submit another written request and his name was added to the bottom of the waiting list. Correctional staff made exceptions to this procedure for inmates with documented emergencies. The typewriters in the Resource Center were available for inmate use on a first-come, first-served basis. Fernandez requested access to the Resource Center as frequently as possible and was called to use the Resource Center on many occasions.[3] Photocopy services were provided to Fernandez in accordance with Department of Correction Administrative Directives.

In May 2002, Fernandez appealed a civil asset forfeiture action, <u>State of Connecticut v. One Thousand Nine Hundred Ten Dollars</u>, No. CV-00-0341157, to the Connecticut Appellate Court. In June 2002, Fernandez refused to accept a letter from the Connecticut Appellate Court informing him of the case number assigned to his appeal because the letter had been misdirected and did not reach him promptly. The Appellate Court re-sent the letter on July 1, 2002.

---

[3] Defendant Candace Hall states that she was unable to locate all documents showing Fernandez' attendance at the Resource Center but provided evidence that Fernandez was included on the Resource Center lists for July 2,10, 23, 31, August 6, 7, 15, 16, 22, September 5, 10, 30, October 3, 7, 11, 15, 21, 22, 25, 28, 29, 31, and November 1,8.

In July 2002, defendant Candace Hall refused to make free photocopies for Fernandez. She informed him that he did not qualify for free copies because he failed to meet the departmental definition of indigency. Fernandez also was denied free legal envelopes, pens and paper for this reason. Departmental policy requires that an inmate have less that $5.00 in his inmate account for ninety days before the inmate is considered indigent. Fernandez' account balance had fallen below $5.00 on May 20, 2002. Thus, he would not meet the indigency definition until August 18, 2002.

On July 31, 2002, Fernandez sent defendant Hannah, the Unit Manager, a request for emergency access to the Resource Center. Defendant Hannah approved the request on August 2, 2002, and forwarded it to defendant Candace Hall. She received the request on August 5, 2002, and indicated that Fernandez would be eligible for emergency access for the next fifteen days, from August 6, 2002, until August 21, 2002. She noted that emergency access was granted as a courtesy because Fernandez had not provided any evidence of a court deadline.

On August 14, 2002, Fernandez sought a three month extension of time to file his appellate brief. In the motion, Fernandez stated that he had encountered difficulty preparing his response. He also stated that he was able to contact a paralegal in the Office of the Chief State's Attorney who consented to the request for extension of time. On September 2, 2002, before the Appellate Court ruled on his motion for extension of time, Fernandez filed a motion to withdraw his appeal. He cited a lack of "adequate opportunity to access the courts" as the reason for his motion. On October 10, 2002, the Appellate Court informed Fernandez that his appeal would be dismissed if he failed to file his brief on or before November 12, 2002, in effect, granting his request for

extension of time.  (See Documents included in Ex. H, attached to Defs.' Local Rule 56(a) Statement, Dkt. No. 48.)

On November 4, 2002, defendant Brozozwski refused to place a non-collect call from Fernandez to the paralegal at the Office of the Chief State's Attorney.  On November 5, 2002, Fernandez wrote a letter to the paralegal seeking a further extension of time.  Instead of sending the letter to the Office of the Chief State's Attorney, however, he mailed it to the Appellate Court.  The letter was returned to him on November 13, 2002, with a notation that he must file a proper motion for extension of time.  On November 15, 2002, Fernandez wrote a letter to the paralegal asking her to contact him regarding his request for extension of time.  On November 27, 2002, the Appellate Court dismissed the appeal because Fernandez failed to submit his brief.  Fernandez filed a properly typed motion for extension of time, dated November 26, 2002, but the motion was returned to him because the appeal had been dismissed.  (See Documents included in Ex. H, attached to Defs.' Local Rule 56(a) Statement, Dkt. No. 48.)

### III.    DISCUSSION

Fernandez asserts various claims relating to his inability to timely submit his appellate brief.  He contends that defendants denied him his Sixth Amendment right of access to the courts and deprived him of other rights guaranteed by the First, Fourth, Fifth, Sixth and Fourteenth Amendments by failing to respond to his grievances, failing to promulgate administrative directives containing mandatory language, failing to investigate whether defendant Candace Hall was prejudiced against him or discriminating against him, failing to provide him grievance forms, and denying a legal

phone call to the paralegal. He contends that defendants subjected him to cruel and unusual punishment by their deliberate indifference to his needs and also caused him physical and mental anguish and emotional injuries.

Defendants assert seven grounds in support of their motion for summary judgment: (1) the Eleventh Amendment bars any claims for damages asserted against defendants in their official capacities; (2) the State of Connecticut is not a person within the meaning of 42 U.S.C. § 1983; (3) Fernandez' claims for injunctive relief are moot; (4) Fernandez fails to state a claim with regard to his allegations concerning (a) denial of access to the courts, (b) free photocopies, (c) free typewriters, (d) cruel and unusual punishment, (e) grievance rights, (f) failure to promulgate administrative directives and (g) any other claims; (5) for many defendants, Fernandez has not alleged facts demonstrating their personal participation in or responsibility for his claims; (6) defendants are protected by qualified immunity; and (7) the court should decline to exercise supplemental jurisdiction over any state law claims.

    A.    <u>Eleventh Amendment Immunity</u>

Defendants argue that all claims for damages asserted against them in their official capacities are barred by the Eleventh Amendment. In response, Fernandez argues that claims for damages and injunctive relief are cognizable against defendants individually. He also states that the "Eleventh Amendment does not bar this action against the defendants in their official capacities for violation of prison regulations which weigh against immunity." (Pl.'s Mem., Dkt. No. 59, at 2.)

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its

sovereign immunity under the Eleventh Amendment.  See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982).  Section 1983 does not override a state's Eleventh Amendment immunity.  See Quern v. Jordan, 440 U.S. 332, 342 (1979).  The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity.  See Kentucky v. Graham, 473 U.S. 159, 167 (1985).  A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

Fernandez has named all defendants in their official and individual capacities and does not indicate in which capacity he seeks damages.  As Fernandez correctly states, the Eleventh Amendment does not bar an action for damages against defendants in their individual capacities.  It does, however, bar an action against them for damages in their official capacities.  Fernandez' statement regarding the violation of prison regulations is misplaced.  He appears to confuse Eleventh Amendment immunity with qualified immunity.

Defendants' motion for summary judgment is granted as to all claims for damages against the defendants in their official capacities.

    B.    Declaratory and Injunctive Relief

Defendants next argue that Fernandez' claims for declaratory and injunctive relief are moot.  The Second Circuit has held that an inmate's request for injunctive relief against correctional staff at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution.  See

Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). See also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). Other courts concur with this result. See, e.g., McAlpine v. Thompson, 187 F.3d 1213, 1215 (10th Cir. 1999) (noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement is rendered moot upon his release from confinement); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding that inmate's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit).

This action concerns events that occurred at Cheshire. Fernandez now is confined at MacDougall-Walker Correctional Institution. Thus, any claims for declaratory and injunctive relief against correctional staff at Cheshire are moot. Defendants' motion for summary judgment is granted as to all claims for declaratory and injunctive relief.

Further, even if the court were to consider these claims, they should be denied.

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626 (a)(1)(A). Fernandez seeks injunctive relief in the form of sweeping changes to the institutional procedures for providing access to courts. He seeks: unlimited access to typewriters, photocoping, and the institutional resource center;

9

improved training for institutional librarians; legal resource courses for inmates, and lawyers or paralegals for all non-English-speaking inmates. He has made no showing, however, that the requested relief extends no further than necessary to correct the alleged violation of his constitutional rights.[4] The court concludes that this relief is not narrowly drawn. In addition, the court determines below, that Fernandez has failed to state a claim for violation of his right of access to the courts.

## C. Right of Access to Courts

The gravamen of Fernandez' amended complaint is that he was denied access to the courts by defendants' failure to ensure that he had sufficient access to the Resource Center and a typewriter, and their failure to provide free photocopies of legal documents until he met the departmental indigency requirements. Defendants contend that Fernandez' right of access to the courts was not violated.

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court clarified what is encompassed in an inmate's right of access to the courts and what constitutes standing to bring a claim for the violation of that right. The Lewis court held that to show that the defendants violated his right of access to the courts, an inmate must allege facts demonstrating an actual injury

---

[4] The many lengthy documents filed by Fernandez clearly demonstrate that, although English may not be his first language, he has substantially mastered the English language. Thus, for example, the relief sought of lawyers or paralegals for non-English-speaking inmates would not appear necessary for Fernandez.

stemming from the defendants' unconstitutional conduct.  See id. at 349.  As an illustration, the court noted that if an inmate were able to show that, as a result of the defendant's action, he was unable to file an initial complaint or petition, or that the complaint he filed was so technically deficient that it was dismissed without a consideration of the merits of the claim, he could state a claim for denial of access to the courts.  See id. at 351.

The Lewis court restricted the types of cases for which correctional officials must ensure access to the courts.  Prisoners must be able to file petitions for writs of habeas corpus in state and federal court to challenge their sentences and civil rights actions under 42 U.S.C. § 1983 "to vindicate 'basic constitutional rights.'"  See id. at 354 (citations omitted) (noting that all cases in the Bounds line were direct appeals of convictions or habeas petitions).  Other frustrated, legal claims do not satisfy the actual injury requirement.

> In other words, Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.   The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.   Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355.  See Bourdon v. Loughren, 386 F.3d 88, 96 (2d Cir. Oct. 5, 2004) ("The right of access to the courts requires that all prisoners defending against criminal charges or convictions (either directly or collaterally) or challenging the conditions of their confinement . . . not be impeded from presenting those defenses and claims for formal

11

adjudication by a court.") (citing Bounds, 430 U.S. at 823, and Lewis, 518 U.S. at 351); Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997) (noting that prisoners must be afforded affirmative assistance in cases challenging their convictions or conditions of confinement).

Fernandez was seeking assistance in connection with the appeal of a civil asset forfeiture action, not with a challenge to his sentence or the conditions of his confinement. The Supreme Court has not included asset forfeiture actions within the class of cases for which an inmate has a constitutional right of access to the courts and correctional officials must ensure court access.[5] Thus, because Fernandez has no constitutional right of access to the courts and assistance from defendants to pursue that appeal, defendants' actions in allegedly impeding his access to the Resource

---

[5] Even if Fernandez' right of access to the courts and affirmative assistance by correctional officials encompassed his appeal of the civil asset forfeiture action, Fernandez has not demonstrated an actual injury resulting from defendants' conduct. While his appeal was dismissed because he failed to timely file his brief, Fernandez cannot place the blame for his failure solely on defendants.

The deadline for filing his brief was November 12, 2002. On November 5, 2004, Fernandez mailed his letter to the paralegal to the Appellate Court, not to the Office of the Chief State's Attorney. The letter was returned to him on November 13, 2002, with instructions to file a proper motion for extension of time. Fernandez mailed his letter to the paralegal at the proper address on November 13, 2002, and sent a proper motion for extension of time to the Appellate Court on November 26, 2002. The appeal was dismissed the following day. Because the appeal had been dismissed by the time the motion reached the Appellate Court, the Clerk returned the motion.

Fernandez waited until one week before the deadline to attempt to contact the paralegal to ascertain her position on his request for additional time. He did not immediately file a motion for extension of time when the letter to the paralegal was returned by the Appellate Court with instruction that he do so, and he does not indicate that he moved to reopen the appeal because of his mistake in addressing the letter. Although Fernandez may not have been afforded as much time in the Resource Center and access to a typewriter as he would have liked, he must assume substantial responsibility for the dismissal of his appeal. Thus, he has not demonstrated an actual injury resulting from defendants' conduct.

Center and typewriters, and denying free photocopies, are not actionable in this case.[6] Defendants' motion for summary judgment is granted as to Fernandez' claim of denial of access to the courts to pursue his civil asset forfeiture action.

      D.      <u>Right to Grievance Forms and Responses to Filed Grievances</u>

Fernandez alleges that defendants violated his constitutional rights by failing to provide grievance forms and by failing to respond to his many emergency grievances. In response, defendants have attached multiple grievances filed by Fernandez with responses.

Department of Correction Administrative Directive 9.6 governs the inmate grievance procedure. <u>See</u> www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf. The directive governs inmate access to grievance forms and describes the procedure for timely resolution of grievances. To the extent that Fernandez' claims may be construed as alleging that defendants filed to comply with these procedures, his claim is not cognizable.

"A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." <u>Levine v. Torvik</u>, 986 F.2d 1506, 1515 (6th Cir. 1993)(citing <u>Engle v. Isaac</u>, 456 U.S. 107 (1982)), <u>overruled in part on other grounds by Thompson v. Keohane</u>, 516 U.S. 99, 111 (1995). This district has previously applied

---

     [6] Fernandez cites cases supporting an inmate's right of access to the courts to file a direct appeal and argues that he has a constitutional right to file the direct appeal of the asset forfeiture case. Fernandez has taken language from the cases out of context. The direct appeal referred to in the case Fernandez cites, <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 391 (6th Cir. 1999), is a civil rights appeal.

the reasoning of the Sixth Circuit to hold that failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right.  See Ruocco v. Tung, No. 3:02cv1443(DJS), 2004 WL 721716, at *14 (D. Conn. Mar 30, 2004); Hunnicutt v. Armstrong, 305 F. Supp. 2d 175, 188-189 (D. Conn. 2004) (grievance procedure).

The court previously has determined that defendants have not violated Fernandez' right of access to the courts.  Thus, Fernandez has not identified any constitutionally or federally protected right that was violated by defendants' failure to comply with institutional grievance procedures.  This court agrees with the Ruocco and Hunnicutt rulings and concludes that any claim that defendants failed to comply with administrative directives does not demonstrate the denial of a constitutionally or federally protected right and, thus, is not cognizable in this civil rights action.  Defendants' motion for summary judgment is granted as to any claim for failure to follow institutional grievance procedures.

E.    Right to Promulgation of Directives

Fernandez contends that defendants failed to promulgate directives containing mandatory language to create a liberty interest in access to the courts through typewriters and the Resource Center.  The court can discern no constitutionally protected right to have correctional officials promulgate directives.

In addition, defendants argue that even if such directives existed, inclusion of mandatory language in a prison directive does not, without more, give rise to a liberty interest protected by the due process clause.  See Sandin v. Connor, 515 U.S. 472,

14

483-484 (1995). An inmate has a protected liberty interest only if the violation of prison regulations had resulted in a deprivation that constitutes an "atypical and significant hardship . . . in relation to the ordinary interests of prison life." Id. at 484.

There are no directives mandating access to typewriters and the Resource Center, and Fernandez has not shown that the limitations he experienced constituted an atypical and significant hardship in relation to the ordinary incidents of prison life. Thus, this claim is not cognizable in this action. Defendants' motion for summary judgment is granted as to the claim that defendants failed to promulgate directives.

F.      Right to Telephone Call

Fernandez alleges that defendant Brozozski failed to comply with Department of Correction Administrative Directive 10.7(5)(E) when he refused to place a non-collect free call from Fernandez to the paralegal in the Office of the Chief State's Attorney. Directive 10.7(5)(E) provides that all privileged calls shall be collect calls except that "[p]rivileged calls to state and federal public defenders offices and Legal Assistance to Prisoners shall be toll free." See www.ct.gov/doc/LIB/doc/PDF/AD/ad1007.pdf. The paralegal Fernandez wanted to call was employed in the Office of the Chief State's Attorney. That organization is not included in the list of organizations eligible for toll-free calls.

Fernandez also argues that defendant Brozozwski ignored a memorandum from defendant Armstrong. The memorandum, dated January 4, 2001, provided that all communications from inmates to the Office of the Attorney General must be in writing unless telephone communication was specifically requested by an Assistant Attorney General. As Fernandez was not attempting to call the Office of the Attorney General,

15

this argument is without merit.

Further, even if defendant Brozozwski failed to comply with an institutional directive or policy, that violation, as discussed above, is not cognizable in a federal civil rights action. Accordingly, defendants' motion for summary judgment is granted as to any claim for denial of a free telephone call.

G.    Equal Protection

Finally, Fernandez contends that he was denied his right to equal protection of the law because he was denied access to the Resource Center for racial reasons. The only facts alleged to support this claim are that, prior to July 16, 2002, Fernandez and two other inmates asked that their names be added to the list to use the Resource Center. Fernandez alleges that the other inmates were assisted "without delay" while he was not.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws . . ." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). This provision does not mandate identical treatment for each individual; rather it requires that "all persons similarly situated should be treated alike." Id. "To state an equal protection claim, a plaintiff must charge a government officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation." Brady v. Town of Colchester, 863 F.2d 205, 216 (2d Cir.1988) (citation omitted). State legislation that creates suspect or "quasi-suspect" classifications or that impinges a fundamental right is subject to heightened judicial scrutiny. City of Cleburne, 473 U.S. at 440. All other classifications are valid if they are "rationally related to a legitimate state interest." Id.

The court does not apply a heightened standard of review to prisoner claims "[b]ecause prisoners either in the aggregate or specified by offense are not a suspect class . . . . Lee v. Governor of New York, 87 F.3d 55, 60 (2d Cir.1996).

As an inmate, Fernandez is not a member of a suspect class. Thus, to assert an equal protection claim, he must allege that he was treated differently from other inmates in similar circumstances and that the unequal treatment was the result of intentional discrimination. He has provided no evidence to support this claim. For example, Fernandez fails to provide evidence that two other inmates visited the Resource Center more frequently or that they had not presented correctional officials with evidence of a confirmed court deadline. The evidence provided shows that Fernandez was listed to be called to use the Resource Center on four days in July and five days in August, even though he did not provide any evidence of his court deadline until October 2002. In addition, although he alleges that he was subjected to prejudice and racial discrimination, he has provided no evidence to show that inmates from different races were treated differently with regard to use of the Resource Center. While Fernandez' allegation may have been sufficient to survive a motion to dismiss, he has not met his burden of demonstrating a genuine issue of material fact warranting denial of summary judgment on this issue. Defendants' motion for summary judgment is granted on this claim as well.

H. State Law Claims

Defendants contend that the court should decline to exercise supplemental jurisdiction over any state law claims contained in the complaint. The court agrees.

Supplemental or pendent jurisdiction is a matter of discretion, not of right. United

Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  Where all federal claims have been dismissed before trial, state claims should be dismissed as well.  See Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998).  The court declines to exercise supplemental jurisdiction over any state law claims on the ground that it has dismissed all claims over which it has original jurisdiction.

## IV.    CONCLUSION

Defendants' motion for summary judgment [**Dkt. No. 46**] is **GRANTED**.  The Clerk is directed to enter judgment and close this case.

**SO ORDERED.**

Dated this 7th day of December, 2004, at Bridgeport, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge